### A90A1393. IN RE JONES.
(401 SE2d 278)

COOPER, Judge.

Appellant, an attorney, appeals a criminal contempt citation issued against him by the trial judge, before whom appellant was trying a medical malpractice case. The events which led to the contempt citation occurred during the second trial of the case, the first trial having been declared a mistrial by the judge. During the pretrial conference on September 15, 1989, the judge, after discussing with the attorneys their handling of the press, defined an area outside the jury room in which the jurors would be allowed access during the trial, and identified a cutoff point beyond which the attorneys were not to have any discussions with the press about the case. On March 5, 1990, during a recess, the judge held a settlement conference with the attorneys in his chambers. The court stated: "And let me also say, this is on the record. But this is a settlement conversation, as I see it, which means

it should not be published. This should not be in the paper. It's fine to put this in the record so we have, for our purposes, a record of it. But this conversation, it seems to me, is not taking place in the courtroom for good reason, because this is not an open conversation and should not be broadcast in the Daily Report or anywhere else. If anybody has a disagreement with that, I'd like to hear it." Appellant responded: "Fine." The settlement conference concluded with the judge asking attorneys for both sides to confer with their respective clients and report back to him separately regarding their clients' proposals for settlement. Approximately two hours later, during a meeting with the attorneys for both parties, the judge stated that he had received a report from his sheriff that while the judge was discussing settlement with attorneys for the defendants, appellant was having a discussion with the press in the presence of jurors, in the area which had been restricted by the court. When asked by the judge what the conversation was about and why it was being conducted in front of the jury, the following colloquy occurred between the judge and appellant: "[APPELLANT]: Your honor, I was unaware that we weren't supposed to be standing in that area. The conversation was just general small talk. It didn't have anything to do with the case. And I was very careful to see that no jurors could hear any of it. [THE COURT]: When you say the conversation didn't concern the case, what do you mean? [APPELLANT]: Well, it was about mostly unrelated subject matters. I mean, they were interested in what was going on, and I said, well, you know, there were some settlement discussions going on, we're not supposed to talk to you about it, period. Other than that, that's about all that was said about the case." Attorneys for the defendants informed the court at that meeting that they had received information that appellant was holding a press conference; that appellant mentioned certain testimony that had been excluded; that appellant discussed the RICO claims made in the lawsuit; and that appellant discussed those matters in the presence of jurors. Appellant responded that he told reporters settlement discussions were going on but that he could not talk about them; that he did not remember mentioning the RICO claim; that although he may have mentioned that a certain doctor's testimony was excluded, he did not have any substantive discussion about any of the evidence; and that no juror heard anything that was said. The judge then interviewed the reporters privately, after which the following proceedings took place in open court: The defendants moved for a dismissal of the RICO claims pursuant to OCGA § 9-11-41 (b), on the grounds that appellant had failed to comply with a court order. Before the judge ruled on the motion, appellant filed with the court a dismissal without prejudice. The judge, after relating certain findings of fact, found appellant to be in direct criminal contempt of court and fined him $500.

1. Appellant contends that the trial court erred in its summary adjudication of contempt because appellant's conduct did not occur in the presence of the judge. A direct criminal contempt is one involving conduct committed in the presence of the court or so near thereto as to obstruct the administration of justice and the court has the power to punish such contempt summarily and without a hearing. OCGA § 15-1-4 (a); *Martin v. Waters*, 151 Ga. App. 149 (1) (259 SE2d 153) (1979). The judge found three acts of contumacious conduct in this case. First, appellant talked to reporters in the presence of jurors about the case and the fact that settlement discussions were taking place almost immediately after being instructed by the judge that no such conversations were to take place; second, appellant spoke with reporters about the case in an area where the judge had previously restricted such conversations because of the presence of jurors; and third, appellant was untruthful with the judge when asked about the nature of his conversation with the reporters. "During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing." *Dowdy v. Palmour*, 251 Ga. 135, 141-142 (2) (304 SE2d 52) (1983). Appellant spoke with reporters in an area immediately surrounding the courtroom and within which the judge had a right to restrict access in order to assure the parties a fair trial. The record reflects that when the judge discovered that some jurors may have overheard appellant discussing the case, the judge questioned appellant about it and appellant was untruthful with the judge, thus hindering the judge's ability to assure a fair trial. We conclude that each act of contumacious conduct either took place in the presence of the court or so near thereto as to obstruct the administration of justice so as to constitute a direct contempt and that summary adjudication of contempt was an appropriate sanction.

2. In his second enumeration of error, appellant contends that he was entitled to a hearing because the judge did not punish him immediately after the contumacious conduct. We disagree. Upon discovering the contumacious conduct, the judge, after hearing appellant's version of the events, ordered a recess to speak with the reporters involved. When he returned to the courtroom that same afternoon, the judge rendered his decision. This is not a case where the court finds an attorney in contempt and delays the punishment until after the trial of the case. See *Dowdy v. Palmour*, supra; *In re Bryant*, 188 Ga. App. 383 (1) (373 SE2d 74) (1988). The judge in this case did not delay his decision, but announced his decision at the first available opportunity upon returning to the bench. Although appellant dis-

missed the case prior to the judge's decision, it is clear from the record that the judge intended to announce his ruling before proceeding with the case. We find appellant's second enumeration of error to be without merit.

3. In his third enumeration of error, appellant contends that the trial court erred in not appointing another judge to preside over the contempt hearing. Since the record does not reflect that appellant's contumacious conduct was directed toward the judge or that the judge reacted in such a manner as to become involved in the controversy (see *Dowdy v. Palmour*, supra), we find this enumeration of error to be without merit.

4. Even if we conclude, as appellant argues in his fourth enumeration of error, that the court's orders were not sufficiently definite so as to find him in wilful violation of them, we cannot conclude that appellant's untruthfulness to the court was not wilful and unintentional. We find that the court properly exercised its contempt power under OCGA § 15-1-4.

5. In his fifth enumeration of error, appellant contends that the trial court erred in relying on the testimony of reporters in finding appellant guilty of contempt. Inasmuch as the judge cited specific examples of appellant's untruthfulness which were committed directly in his presence, the record does not support appellant's argument.

6. We further find that appellant's actions in talking about the case and the settlement in the presence of jurors, while the trial was underway, and his subsequent untruthfulness with the court about his conversation created a "clear and present danger to orderly administration of justice. [Cit.]" *Garland v. State*, 253 Ga. 789, 790 (2) (325 SE2d 131) (1985). Specifically, the conduct of appellant interfered with the trial judge's attempt to assure that the litigants received a fair trial. Accordingly, appellant's sixth enumeration of error is also without merit.

7. Appellant contends that the trial court erred in failing to make findings of fact and conclusions of law. However, findings of fact and conclusions of law are not required in criminal contempt cases. *PBJ Dev. Co. v. Holben*, 259 Ga. 594 (1) (385 SE2d 658) (1989). However, because the record does not reflect that the trial court applied the reasonable doubt standard, we must affirm on the condition that the trial court state whether it applied the correct standard. "If the court states that it did not apply the correct standard, then the trial court is to proceed to apply the correct standard. If the trial court then concludes the evidence is sufficient under the correct standard, the [appellant is] entitled to no further appeal." *PBJ Dev. Co. v. Holben*, supra at Division 3.

*Judgment affirmed on condition. Banke, P. J., and Birdsong, J., concur.*

DECIDED NOVEMBER 6, 1990 —
REHEARINGS DENIED DECEMBER 20, 1990 —

*Jones, Brown & Brennan, Rebecca A. Copeland, The Garland Firm, Edward T. M. Garland, Donald F. Samuel, Kathleen V. Duffield*, for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Richard E. Hicks, Assistant District Attorneys*, for appellee.