A07A2230. IN RE HARRIS.
(657 SE2d 259)

ELLINGTON, Judge.

Sasha Harris appeals from the trial court's order finding her in direct criminal contempt of court and sentencing her to 48 hours of incarceration to be served instanter. She appeals, contending that she was denied due process. For the following reasons, we reverse the court's order.

---

The record shows the following. Sasha Harris was a friend of Joewona Singletary-Randolph. In September 2002, Ms. Singletary-Randolph divorced Melvin Randolph. Pursuant to their separation agreement, which was incorporated into the divorce decree, the Randolphs agreed that they would respect each other's custodial and visitation rights to their three children and would not "attempt to influence the children not to love and respect the other parent." In November 2006, Melvin Randolph (hereinafter, "the father") filed a contempt petition against his ex-wife, alleging that she had violated the separation agreement by "willfully mak[ing] disparaging remarks regarding [him] to the minor children, and continu[ing] to teach the children to not love or respect their Father." The court issued a rule nisi ordering Ms. Singletary-Randolph ("the mother") to appear at a hearing on the petition.

The contempt petition did not allege that Harris, the mother's friend, had violated the separation agreement, nor did Harris receive any formal notice of the contempt hearing. Although Harris was not subpoenaed to appear as a witness, she did attend the hearing.

At some point on the day of the hearing, the trial court entered an order, sua sponte, finding Harris in direct criminal contempt of the Randolphs' separation agreement. The court's order states as follows:

> The parties appeared for the regularly scheduled NISI calendar of March 5, 2007, on [the father's] Petition for Contempt regarding visitation with the parties [sic] 3 minor children. As a result of the hearing as well as an *in camera* discussion with the 3 minor children, the Court ordered that the children would spend the remainder of the day visiting with their father in accordance with their wishes. When the [father] went to take the children from the Court, they found that one of the children, [14-year-old M. M. D. R.], was crying and would not leave.

> The Court again met *in camera* with the minor to see what had occurred, and the minor informed the Court that . . . her maternal grandmother, and Sasha Harris . . . , a friend of the [mother], had told her that the Court proceeding was "a trick and that [the father] is trying to take custody of her and trying to make [the mother] pay child support." They made other comments, as well, with the intention to undermine the Court's Order and to encourage the minors and the parties to act in contempt and contravention of the Court's Order. As a result of the foregoing, [the grandmother] and Sasha Harris . . . are HEREBY HELD IN DIRECT CONTEMPT OF COURT. They shall be incarcerated *instanter* to be released in 48 hours, on March 7, 2007.

(Emphasis in original.) Based upon this order, Harris was taken into custody. The next day, this Court granted her motion for supersedeas pending this appeal.

On appeal, Harris contends the judgment of contempt must be reversed because she was deprived of her constitutional due process rights of reasonable notice of the charges against her and a meaningful opportunity to respond to them. She also contends that she was unconstitutionally incarcerated for alleged constructive criminal contempt without being afforded her due process rights. Based upon the record before us, we conclude that Harris was denied due process and that the court's order must be reversed.

1. As an initial matter, the record does not support the court's conclusion that Harris' alleged comments to the child constituted direct criminal contempt.

"[C]riminal contempt is a crime in the ordinary sense and the evidence of the contempt must be beyond a reasonable doubt. Contempt is a drastic remedy which ought not to deprive one of her liberty unless it rests upon a firm and proper basis." (Citations and punctuation omitted.) *Salter v. Greene*, 226 Ga. App. 384, 385 (1) (486 SE2d 650) (1997). "The burden of establishing the fact of contempt is on the party asserting it." (Citation omitted.) *Martin v. Waters*, 151 Ga. App. 149, 150 (2) (259 SE2d 153) (1979).

> The classification of contempt proceedings as civil or criminal is one depending on the facts of each case. This is true of direct and indirect contempts, a direct criminal contempt being one involving misbehavior in the presence of the court or so near thereto as to obstruct the administration of justice. Courts have inherent power to punish direct criminal contempts committed in their presence summarily and without a hearing, the judge being aware by use of his own senses of what has transpired.

(Citations omitted.) Id. at 149-150 (1).

In this case, the court's order does not show when or where Harris and the children's grandmother allegedly made the contumacious statements to the child and, therefore, does not establish that they occurred in the court's presence or so near thereto as to obstruct the administration of justice. *Martin v. Waters*, 151 Ga. App. at 149-150 (1). In fact, the court's order shows that the court first learned of the statements during an in camera discussion with the child, so the court was admittedly unaware of any contumacious conduct by Harris prior to that discussion. Accordingly, the court erred in finding that Harris' alleged comments constituted direct criminal contempt.

2. Moreover, the record does not support a conclusion that Harris was in constructive criminal contempt, because she was not bound by the separation agreement, did not have actual notice of the separation agreement, and had no notice of or opportunity to be heard on the allegations of contempt.

(a) Harris was not a party to the Randolphs' 2002 separation agreement, in which they agreed that "[n]either *party* shall attempt to influence the children not to love and respect the other parent." (Emphasis supplied.) Therefore, under the plain language of the agreement, Harris was not bound by the provision. See *Salter v. Greene*, 226 Ga. App. at 386 (2) (the appellant was not bound by the special conditions of her ex-husband's probation, which prohibited him from having contact with her, and, therefore, could not be found in contempt for voluntarily taking a trip with him). Even if the agreement had applied to her, the court made no findings of fact that Harris had any prior knowledge of the provision of the agreement that she allegedly violated. In fact, the court's order does not even suggest that it attempted to find out if Harris was aware of the agreement prior to the hearing.

Thus, the record does not support a finding that the agreement applied to Harris or that she knowingly and wilfully violated a provision of the agreement. Consequently, Harris may not be held in contempt of such agreement, and the court's order must be reversed. *Salter v. Greene*, 226 Ga. App. at 386 (2).

(b) The court's order must also be reversed because Harris did not receive due process and an opportunity to defend herself against the contempt allegation.

> In cases of constructive contempt of court, where the alleged contumacious conduct is disobedience to a mandate of the court, not an act in the presence of the court or so near thereto as to obstruct the administration of justice, the law requires that a rule nisi issue and be served upon the accused, giving [the accused] notice of the charges against [her], and that [the accused] be given an opportunity to be heard. The notice given by the rule nisi is to afford the accused a reasonable time in which to prepare [her] defense to the charge that [she] had violated the court's order. . . . This requirement of reasonable notice in a case involving an alleged *indirect* contempt is not satisfied by a showing that the accused was present in court at the time of trial and adjudication and had actual notice then and there of what was going on, but rather contemplates and necessitates a written notice fairly and fully informing the accused of the specific acts of contempt with which [she] is charged, and so

given as to afford a reasonable time to make [her] defense. Any notice short of that would make a hollow mockery of the fundamental and abiding truth that reasonable notice to one whose civil rights or personal liberty may be affected is a veritable cornerstone of our judicial system, would constitute nothing more than an exquisite exercise in frustrating futility, sometimes misleading and always meaningless, and would be but sounding brass and tinkling cymbal, a notice in form but not in substance.

(Citations and punctuation omitted; emphasis in original.) *Crocker v. Crocker*, 132 Ga. App. 587, 589-590 (1) (208 SE2d 602) (1974). See also *Salter v. Greene*, 226 Ga. App. at 385 (1) (the court erred in holding the appellant in constructive criminal contempt when the appellant had no prior notice that she should be prepared to defend herself against contempt charges); *Martin v. Waters*, 151 Ga. App. at 150-151 (2) (the court erred in holding the appellant in contempt based upon his failure to appear at a court proceeding when the appellant had no notice or opportunity to explain his absence).

Here, the record shows that Harris had no notice prior to the hearing that there were allegations that she had violated an order of the court or that she should be prepared to defend herself against such allegations. Consequently, she was not represented by counsel at the hearing. Further, there is nothing in the record to show that Harris had an opportunity to defend herself or to even respond to the minor child's allegations before being found in contempt.

Although the failure to give the requisite rule nisi to an alleged contemnor may be waived, "such a waiver cannot be imputed unless it [is] shown that the notice was unequivocally waived." (Citation omitted.) *Crocker v. Crocker*, 132 Ga. App. at 590 (1). There is no evidence of such waiver by Harris in this case.

Accordingly, the court's contempt order must be reversed.

*Judgment reversed. Andrews, P. J., and Adams, J., concur.*

DECIDED JANUARY 25, 2008.

*Pekor & DeWoskin, Charles B. Pekor, Jr.*, for appellant.