**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**May 5, 2015**

# In the Court of Appeals of Georgia

A15A0507. MOTON v. THE STATE.

DILLARD, Judge.

Following a hearing, a trial court found Earl M. Moton, Sr., guilty of criminal contempt. On appeal, Moton contends that the evidence was insufficient to support his conviction. For the reasons set forth *infra*, we affirm.

At the outset, we note that, as with any criminal conviction, "the evidence in any criminal contempt case must show that the defendant is guilty beyond a reasonable doubt."[1] Indeed, criminal contempt is a crime in the ordinary sense; "it is a violation of the law, a public wrong which is punishable by fine or imprisonment

---

[1] *Garland v. State*, 253 Ga. 789, 790 (1) (325 SE2d 131) (1985); *see also In re Winship*, 397 U.S. 358, 361-65 (I) (90 SCt 1068, 25 LE2d 368) (1970).

or both."[2] And on appeal of a criminal-contempt conviction, the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

So viewed, the record shows that on April 3, 2014, Moton was at the DeKalb County courthouse to testify as a character witness for his son, Earl Moton, II, who was being tried on charges that he committed an act of public indecency at a local library. Specifically, the evidence in that case showed that a library patron saw the younger Moton expose his penis and begin masturbating while he was watching the patron's ten-year-old daughter, who was sitting at a nearby desk using one of the library's computers. Immediately, the patron, her close family friend, and one of the librarians confronted the younger Moton, who admitted adjusting himself but denied any criminal intent.

---

[2] *Garland*, 253 Ga. at 790 (1) (punctuation omitted); *see also Bloom v. Illinois*, 391 U.S. 194, 201 (II) (88 SCt 1477, 20 LE2d 522) (1968) (same); *Gompers v. United States*, 233 U.S. 604, 610 (34 SCt 693, 58 LEd 1115) (1914) ("These contempts are infractions of the law, visited with punishments as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech.") (Holmes, J.).

[3] *Cabiness v. Lambros*, 303 Ga. App. 253, 255 (1) (692 SE2d 817) (2010) (punctuation omitted).

Toward the end of the trial, but before the evidence was closed, the library patron, her family friend, and three of the librarians were sitting in the hallway outside of the courtroom when a visibly upset Moton began pacing back and forth while loudly exclaiming that he hoped God would make the children and grandchildren of those who lied about his son suffer in the same way his son was currently suffering. The same witnesses also heard Moton angrily refer to the patron's daughter, stating that no one "wants that" and that nobody even "knew whether it was a boy or a girl" because she was "all covered up."[4] In addition, Moton further complained that he had donated money to that branch of the library but, yet, was not called by library staff on the day of his son's alleged indiscretion.

Subsequently, the witnesses reported Moton's behavior to the State's solicitor, who then informed the trial court. And after hearing a brief account of Moton's statements from three of the witnesses, the trial court explained to Moton that it would hold a hearing to determine if he was guilty of criminal contempt. Later that same day, the trial court issued a rule nisi, informing Moton that he was being charged with criminal contempt for "threatening and otherwise intimidating witnesses

---

[4] Although the record is not entirely clear, apparently the library patron's daughter was wearing some variation of a hijab.

for the State outside of the presence of the Court." In addition, the order directed Moton to appear for an evidentiary hearing to adjudicate the issue.

As noticed, on April 14, 2014, the trial court held a criminal-contempt hearing, in which the library patron, her family friend, and the three librarians testified regarding Moton's comments in the hallway outside of the courtroom on the day of his son's trial. Moton did not testify, but several witnesses—who had also testified as character witnesses for his son—claimed that he was only loudly praying outside of the courtroom. Nevertheless, at the conclusion of the hearing, the trial court found that Moton's actions were a danger to the orderly administration of justice and, thus, that he was guilty of criminal contempt. This appeal follows.

In his sole enumeration of error, Moton contends that the evidence was insufficient to support his criminal-contempt conviction because he violated no statute or court order. This argument is entirely lacking in merit.

It is well established that the distinction between criminal and civil contempt is that "criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of

4

coercing future compliance with a prior court order."[5] Indeed, under OCGA § 15-1-4 (a) (1), a trial court can issue attachments and inflict summary punishment for contempt of court in cases of "[m]isbehavior of any person or persons in the presence of such courts or so near thereto as to obstruct the administration of justice." But the Supreme Court of Georgia has "stressed the importance of confining summary contempt orders to misconduct occurring in court."[6] And where the alleged contumacious acts are committed outside the court's presence, "the considerations justifying expedited procedures do not pertain."[7] In such situations, summary adjudication of indirect contempt is prohibited, and "due process requires that a person who is tried for indirect criminal contempt is entitled to more normal

---

[5] *City of Cumming v. Realty Dev. Corp.*, 268 Ga. 461, 462 (2) (491 SE2d 60) (1997) (punctuation omitted); *see also Alexander v. DeKalb County*, 264 Ga. 362, 364 (1) (444 SE2d 743) (1994) (same); *Carey Canada, Inc. v. Hinely*, 257 Ga. 150, 151 (356 SE2d 202) (1987) (same).

[6] *Ramirez v. State*, 279 Ga. 13, 15 (2) (608 SE2d 645) (2005) (punctuation omitted); *see also Pounders v. Watson*, 521 U.S. 982, 988 (117 SCt 2359, 138 LE2d 976) (1997) (same).

[7] *Ramirez*, 279 Ga. at 15 (2) (punctuation omitted); *accord International Union v. Bagwell*, 512 U.S. 821, 833 (II) (B) (114 SCt. 2552, 129 LE2d 642) (1994).

adversary procedures."[8] Thus, a defendant charged with criminal contempt must, *inter alia*, be "advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses."[9]

Here, the trial court did not impose summary punishment upon Moton, but rather, informed him in open court (during his son's trial) that it would be scheduling a criminal-contempt hearing (during which he could be represented by counsel) based upon evidence that he was intimidating witnesses. Additionally, the trial court issued a rule nisi that also advised Moton of the charge against him.[10] Consequently, Moton's contention that he was not put on notice as to why he was being charged with criminal contempt, and thus not afforded due process, is belied by the record. [11]

Moton further argues that he was nevertheless denied due process because he was not notified that he violated a specific court order or statute, implying that there

---

[8] *Ramirez*, 279 Ga. at 15 (2) (footnote and punctuation omitted); *see also Young v. United States*, 481 U.S. 787, 798 (107 SCt 2124, 95 LE2d 740) (1987).

[9] *Ramirez*, 279 Ga. at 15 (2) (punctuation omitted); *see also Young*, 481 U.S. at 798-99.

[10] *See In re Harris*, 289 Ga. App. 334, 337 (2)(b) (657 SE2d 259) (2008) (holding that in criminal contempt cases the law requires that a rule nisi issue and be served upon the accused to inform him of the charges, which satisfies due process).

[11] *Cf. Ramirez*, 279 Ga. at 15 (2).

can be no criminal contempt without such a violation. This argument is a nonstarter. As OCGA § 15-1-4 (a) (1) clearly contemplates, and as we have previously held, criminal contempt "involves some form of wilful disrespect toward the court; it may involve intentional disregard for or disobedience of an order or command of the court, or it may involve conduct which interferes with the court's ability to administer justice."[12] And here, at the evidentiary hearing, the State showed that *prior to the close of evidence* in his son's criminal trial, Moton directed loud, threatening comments toward several of the State's witnesses and, thus, engaged in behavior that "created a clear and present danger to orderly administration of justice."[13] Accordingly, the evidence was sufficient to support the trial court's finding that Moton was guilty of criminal contempt.

*Judgment affirmed. Ellington, P. J., and McFadden, J., concur.*

---

[12] *In re Schoolcraft*, 274 Ga. App. 271, 274 (2) (617 SE2d 241) (2005) (punctuation omitted); *see also In re Spruell*, 227 Ga. App. 324, 325 (489 SE2d 48) (1997) (same).

[13] *In re Jones*, 198 Ga. App. 228, 231 (6) (401 SE2d 278) (1990) (punctuation omitted); *see also Wood v. Georgia*, 370 U.S. 375, 384-85 (82 SCt 1364, 8 LE2d 569) (1962); *Garland v. State*, 253 Ga. 789, 790 (2) (325 SE2d 131) (1985).