**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J. and PHIPPS, P. J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 27, 2016**

# In the Court of Appeals of Georgia

A16A0923. IN RE: CURT THOMPSON.

PHIPPS, Presiding Judge.

Attorney Curt Thompson appeals an order finding him in criminal contempt of the State Court of Douglas County. He contends that he was denied due process because he was not given notice that he faced a criminal charge and did not knowingly waive his right to counsel, that the trial judge should have recused himself sua sponte, and that the evidence was insufficient. For the following reason, we reverse.

The record shows that Thompson, a solo practitioner and state senator, represented a contractor sued for breach of contract in the Magistrate Court of Douglas County. At the plaintiff's request, the action was transferred to state court in December 2014. In early February 2015, pursuant to OCGA § 9-10-150, Thompson

filed a motion to stay the case until after the conclusion of the Georgia legislative session. The trial court granted this motion, and in June 2015, the plaintiff filed a request to have the case placed on the next available bench trial calendar. Although the notice of hearing is not part of the record on appeal, Thompson did not dispute that he received notice of a bench trial date of September 24, 2015.

On October 2, 2015, the trial court signed an "Order on Contempt," setting a hearing for November 2, 2015, and ordering Thompson "to show-cause why he should not be held in contempt" ("the show-cause order") based on his conduct with respect to the scheduled bench trial. Specifically, in the three-page order, the trial court outlined the facts as follows: on September 22, 2015, Thompson emailed the court that he had found out the day before that he had two criminal cases being called for trial in the Superior Court of DeKalb County on September 24, 2015, the same day as the scheduled bench trial. Thompson stated he did not anticipate being finished with those cases in one day and would be unable to appear for the bench trial. Thompson sent a conflict letter (attached to the court's order), which added that the criminal cases "were being called forward" at 9:00 a.m. on September 24.

According to the show-cause order, however, the court's (unnamed) law clerk had contacted the DeKalb County Clerk's Office and was informed that neither of

2

Thompson's two cases was on a jury trial calendar for that week but that they were scheduled for probation revocation hearings on October 1, 2015. The law clerk telephoned Thompson at about 3:30 p.m. on September 24, and Thompson told her one of his cases had gone forward, that he had argued a motion before the court in DeKalb County that day, and that they were getting ready to strike a jury on the morning of September 25, 2015, for that case. Thompson had been unable to recall the name of the DeKalb County judge but had promised to provide this information by the end of the day. The law clerk sent a follow-up email to Thompson asking for this information on September 25, but as of the date of the show-cause order (October 2), Thompson had not provided the name of the judge.

At the show-cause hearing, the State called Sangeetha Krishnakumar, who testified that she was the law clerk for the trial judge and another state court judge. She testified that on September 22, 2015, Thompson had emailed her that he had a conflict in DeKalb County and would not be able to make it to the hearing on September 24. A printout of Thompson's email and her reply were introduced into evidence. Krishnakumar testified further that she had called the DeKalb County Clerk's office to ascertain the name of the judge, using the case numbers from

3

Thompson's conflict letter, and had spoken with that judge's judicial assistant, Trudy Darby.

Darby also testified that only one case was on the calendar the week of September 21, 2015. Thompson's two cases involved probation violation charges that were filed on September 22, 2015, and were set for a hearing on October 1, 2015.

After the prosecution rested, Thompson testified that when he found out about the October 1 probation revocation hearing, he contacted his client's probation officer, the DeKalb Superior Court, and the district attorney's office because he had a legislative conflict that required him to be in Washington, D.C. that day. At the probation officer's suggestion, he decided to go to court in DeKalb County on September 24 to see if he could resolve the matter early with a consent order. He acknowledged that he did not give the Douglas County court the "entire story" but claimed he had not intended to deceive the court.

When he arrived at the DeKalb courtroom on September 24, a trial was taking place. After sitting in the courtroom for 30 minutes, Thompson left to "find out what was going on [and discovered that] the order had not been given apparently to bring [his client] over." Thompson did not recall telling the law clerk that the DeKalb case was going to trial; he instead told her that his client had another charge pending in

Clayton County that he believed was going to trial. Thompson added that he had been having problems with his email account, that his office assistant was in the hospital, and that he was not working at his best as he relied on his assistant to keep his solo practice running.

The trial court found Thompson in indirect criminal contempt of court beyond a reasonable doubt and ordered him to spend ten days in jail. The court found that Thompson had not complied with the conflict rules because his conflict letter was not timely, he had not listed the name of the DeKalb County judge or suggested a possible solution to the conflict, and he did not report back to the court once the conflict was resolved.

The court found that the "more disturbing issue" was that Thompson "allegedly [was] being untruthful with the Court, and in particular Ms. Krishnakumar, the law clerk of the Court, which basically she represents the Court." Specifically, the court did not find credible Thompson's denial of the statements to Krishnakumar, his testimony that he had a consent worked out in the probation revocations or that he was even in court in DeKalb County on September 24. The trial court found that Thompson's "excuses" were not plausible, and, even if true, they would not justify his conduct. Further, his failure to give the name of the DeKalb County judge was

5

evidence of dishonesty, and continuing to adhere to his account indicated lack of remorse. The court found that Thompson had intentionally provided false information to the court and that his conduct was willful.

1. Thompson argues that he was denied due process because the show-cause order did not inform him of the possibility of incarceration or a "penal fine." He claims that not realizing the potential consequences, he represented himself at the hearing without making a knowing, intelligent, and voluntary waiver of the benefit of counsel.

"[C]riminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both."[1] "[C]riminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order."[2]

---

[1] *Moton v. State*, 332 Ga. App. 300 (772 SE2d 393) (2015) (punctuation and footnote omitted). See also *In re Hadaway*, 290 Ga. App. 453, 457 (659 SE2d 863 (2008).

[2] *Moton*, supra at 301 (punctuation and footnote omitted).

Direct acts of contempt, which occur within the sensory perception of the judge, typically in open court, may be punished summarily to preserve order.[3] For indirect contempt, however, due process requires that the person charged "must, inter alia, be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses."[4] For serious criminal contempt involving imprisonment of more than six months, the alleged contemnor additionally has the right to a jury trial.[5]

Although an alleged contemnor facing imprisonment may waive his right to counsel, such waiver must be made knowingly, intelligently, and voluntarily.[6]

---

[3] OCGA § 15-1-4 (a) (1); *Ramirez v. State*, 279 Ga. 13, 14-15 (6) (608 SE2d 645) (2005); *In re Otuonye*, 279 Ga. App. 468, 469 (1) (631 SE2d 500) (2006).

[4] *Moton*, supra at 302 (punctuation and footnote omitted). See also *Cooke v. United States*, 267 U. S. 517, 537 (45 SCt 390, 69 LE 767) (1925).

[5] *United Mine Workers v. Bagwell*, 512 U. S. 821, 826-827 (II) (A) (114 SCt 2552, 129 LE2d 642) (1994); *Young v. United States*, 481 U. S. 787 (107 SCt 2124, 95 LE2d 740) (1987).

[6] *Merritt v. State*, 261 Ga. App. 597, 598 (583 SE2d 283) (2003). See also *Argersinger v. Hamlin*, 407 U. S. 25, 37 (92 SCt 2006, 32 LE2d 530) (1972) ("[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.") (footnote omitted).

The court need not use any magic words to determine if a valid waiver was made, but the State has the burden of showing from the record that the defendant understood (1) the nature of the charges against him, (2) any statutory lesser included offenses, (3) the range of possible punishments for the charges, (4) possible defenses, (5) mitigating circumstances, and (6) any other facts necessary for a broad understanding of the matter. *Otherwise, there is no valid waiver.*[7]

The record does not demonstrate a valid waiver by Thompson of the right to counsel.[8] The hearing began with the following exchange:

THE COURT: This is in case number 14-SV-00563, the hearing on the contempt citation filed by this Court against Mr. Thompson. Mr. Krull, are you ready for the State?

MR. KRULL: Yes.

THE COURT: Mr. Thompson, are you going to be representing yourself in this matter?

MR. THOMPSON: I will. But I was coming down here with – I have in hand, as best I have, the documentation and evidence.

THE COURT: Okay. Mr Krull, you may proceed.

---

[7] *Merritt*, supra (citations omitted; emphasis in original).

[8] See *Merritt*, supra (reversing two-day jail sentence of a grand juror who only appeared for three of eighteen sessions and finding no valid waiver where the trial court told the grand juror that he could have an attorney but that he faced possible incarceration whether or not he had one).

Neither the court nor the State inquired into Thompson's understanding of any of the factors regarding waiver of counsel. "The fact that [Thompson] is an attorney is . . . immaterial to a consideration of his right to the protection of the Sixth Amendment."[9] Because there is no evidence that Thompson waived his right to counsel, we reverse the trial court's finding of contempt. Given our finding that the record does not demonstrate a valid waiver of counsel, we do not address whether the show-cause order was sufficient to put Thompson on notice of the charges against him.

2. Based on our conclusion in Division 1, supra, we also need not address whether the trial judge should have sua sponte recused himself or Thompson's challenge to the sufficiency of the evidence.

*Judgment reversed. Doyle, C. J., and Andrews, P. J., concur*.

---

[9] *Glasser v. United States*, 315 U. S. 60, 70 (62 SCt 457, 86 LE 680) (1942) (adding that an attorney's "professional experience may be a factor in determining whether he actually waived his right to the assistance of counsel. But it is by no means conclusive."), *superseded by statute on other grounds as explained in Bourjaily v. United States*, 483 U. S. 171, 181 (107 SCt 2775, 97 LE2d 144) (1987).