**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 4, 2022**

# In the Court of Appeals of Georgia

A22A0442. COLLINS v. STATE OF GEORGIA.

BROWN, Judge.

In this interlocutory appeal, Jannis Collins contends that the superior court erred in denying her motion to dismiss the State's motion for criminal contempt against her. For the reasons explained below, we agree.

"[W]e review a trial court's ruling on a motion to dismiss de novo." *Sullivan v. Bunnell*, 340 Ga. App. 283, 290 (2) (797 SE2d 499) (2017). The State's motion for criminal contempt alleges that on March 1, 2017, Collins was present in Judge LaTain Kell's courtroom as a potential witness in a civil matter between her sister, Vivian Swain, and brother-in-law, Mark Swain. Collins, who is not a lawyer, sought to represent Ms. Swain but was not allowed to do so. During Mr. Swain's testimony, Collins shouted from the gallery to express her disagreement with his testimony and

was admonished by the court not to speak unless she was testifying. Ms. Swain then expressed that she intended to call Collins as a witness. The court explained the rule of sequestration to Collins, and she left the courtroom.

On the following day, Collins re-entered the courtroom and said something indiscernible during the testimony of Mr. Swain. The trial court then stated, "Ma'am, I told you yesterday that you are not a participant in this case. In fact, you are supposed to be outside. I told you you were to be sequestered yesterday." When Collins responded that she was no longer going to be called as a witness, her sister disagreed. The trial court told Collins "to step outside" and advised "if you interfere with this court proceeding one more time, I'm going to ask you to remain outside." As Collins apparently attempted to leave the courtroom, the trial court called her back to explain her conduct in "ma[king] the gun motion to [her] head and point[ing]" at the judge. After Collins apologized and claimed that she just touched her hair, the trial court stated:

> No ma'am. That was not what you did. . . . If you . . . think, ma'am, that you can come in this courtroom and act the way that you are acting, you are severely mistaken.
>
> If you do — I am warning you right now, if you do one more thing in front of this court that causes me any concern whatsoever or

interferes in any way with this proceeding, I will hold you in contempt and I will have you jailed. Do you understand what I'm saying?

After Collins answered in the affirmative, the trial court instructed her to immediately leave the courtroom.

Two months later, the State filed a motion for criminal contempt in the pending civil case based upon Collins' conduct in the courtroom. According to the State,

Collins looked straight at the judge, made a "gun" symbol with her right hand by extending her thumb and forefinger, putting it to her head, then pointed it at the judge and made a motion as if "pulling the trigger" with the imaginary gun's hammer coming down. This action was witnessed by the Defendant and court personnel, including Deputy Warren, who were present in the courtroom and clearly conveyed a threat to the Court (See report number 17-02695, attached as Exhibit A).[1]

According to the State's motion, the trial judge "immediately asked [ ] Deputy Warren to preserve the courtroom security video of the incident for evidence." Based upon the authority of *In re Crane*, 253 Ga. 667 (324 SE2d 443) (1985), the State asked the trial judge to recuse himself from considering the motion for contempt and that the Clerk of Court randomly assign the matter to another judge. The record shows

---

[1] No Exhibit A is attached to the motion in the record before this Court, and it does not appear elsewhere in the record.

3

that the motion was assigned a new case number. Collins filed a motion to dismiss the motion for contempt, which the newly assigned judge denied.

OCGA § 15-1-4 (a) (1) authorizes a trial court "to issue attachments and inflict summary punishment for contempt of court . . . to cases of . . . [m]isbehavior of any person or persons in the presence of such courts or so near thereto as to obstruct the administration of justice[.]" Criminal and civil contempt differ in "that criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order." (Citation and punctuation omitted.) *Ford v. Ford*, 270 Ga. 314, 315-316 (509 SE2d 612) (1998).

> During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his [or her] presence and observed by him [or her] to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing.

*Dowdy v. Palmour*, 251 Ga. 135, 141-142 (2) (b) (304 SE2d 52) (1983).

> Questions of contempt are for the court treated with the contempt; and its decision ought to be final, except, perhaps, in the case in which the decision shows an enormous abuse of the discretion. The discretion of

the judge finding a party in contempt or in refusing to find a party in contempt has been compared to the discretion lodged in the judges of the superior court in granting or refusing injunctions. The purpose in punishment for criminal contempt is to preserve the power and vindicate the dignity of the court and to punish for disobedience of the court's orders.

(Citations and punctuation omitted.) *Garland v. State*, 101 Ga. App. 395, 401-402 (6) (114 SE2d 176) (1960). With regard to the due process rights of a person subject to being found in criminal contempt by a trial judge, the following four scenarios apply:

(a) A trial judge may find an attorney in contempt of court without trial by jury where the penalty actually imposed does not exceed six months.

(b) During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing. The carrying out of the punishment announced during trial may be postponed until after trial.

(c) Where the announcement of punishment is delayed, and where the contumacious conduct was not directed toward the judge and where the judge did not react to the contumacious conduct in such manner as to become involved in the controversy, the judge has the power to hold a

5

contempt hearing at the conclusion of the trial and, after giving the attorney reasonable notice of the specific charges and opportunity to be heard, to impose punishment.

(d) Where the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such manner as to become involved in the controversy, the judge may give the attorney notice of specific charges, but the hearing, including the attorney's opportunity to be heard, must be conducted by another judge.

(Punctuation and footnotes omitted.) *Dowdy*, 251 Ga. at 141-142 (2), citing *Taylor v. Hayes*, 418 U. S. 488 (94 SCt 2697, 41 LE2d 897) (1974).

In this case, it is not a trial judge who has instituted criminal contempt proceedings against Collins, but the State of Georgia, which has the ability to seek an indictment of Collins for any crime she may have committed in the courtroom. And the State did so in a civil action between private parties to which it was a stranger. The proper procedure is for the trial judge, not the State, to institute criminal contempt proceedings. See, e.g., *Moton v. State*, 332 Ga. App. 300, 302 (772 SE2d 393) (2015) (trial judge informed witness that a criminal contempt hearing would be scheduled and issued rule nisi advising the witness of the charge against him).

6

Accordingly, we reverse the superior court's denial of Collins' motion to dismiss the State's action for criminal contempt against her.

*Judgment reversed. Barnes, P. J., and Hodges, J., concur*.