**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 31, 2023**

# In the Court of Appeals of Georgia

A23A0649. IN RE SYVERTSON.

PIPKIN, Judge.

A trial court held potential juror Robert Syvertson in criminal contempt for discussing the facts of a case in violation of the court's order. On appeal, Syvertson challenges the sufficiency of the evidence. For reasons that follow, we reverse.

"On appeal of a criminal contempt conviction the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted). *Murphy v. Murphy*, 330 Ga. App. 169, 176 (6) (a) (ii) (767 SE2d 789) (2014). Viewed in this light, the evidence shows that Syvertson was called as a potential juror in a criminal matter. Jury selection took place over multiple days, and when the trial court sent

jurors home the first night, it instructed jurors as follows: "Do not look at social media, do not talk to anyone about the case. Do not look up anything about the case[,] and we'll see you at 8:30 tomorrow[.]"

The next day during voir dire, Syvertson indicated in open court that he had knowledge about the case. Syvertson was asked what he had heard about the situation, and he responded "I'll start with this, I'm an uncle. I also have a nephew." He then said he knew a number of police officers and got "to hear things." He continued on with seemingly random comments[1] before being released to go back to the room where the other potential jurors were assembled. Later that day, the judge was informed by the bailiff that Syvertson was talking about the case with other potential jurors. According to the bailiff, Juror 51 reported that Syvertson told Jurors 40 and 41 "that he knew about the case and . . . that the Defendant was guilty."

The trial court questioned Juror 51 on the record, and she testified that Syvertson talked repeatedly about knowing "too much" about the case. During a lunch break, Syvertson approached her and Jurors 40 and 41 and said again that he knew too much; Juror 40 began to ask Syvertson questions, and Juror 51 felt

---

[1] The trial court found that Syvertson "cited quite a few of the facts" in his individual voir dire. Because the record contains no information regarding the underlying criminal case, we cannot tell how these statements relate to that case.

uncomfortable and walked away. Juror 51 clarified that Syvertson had not said anything in front of her about the guilt or innocence of the defendant. Juror 40 was then called in for questioning,[2] and she said that Syvertson had "mentioned at lunch in passing that he knew about the case[,]" but that "he didn't go into detail." According to Juror 40, he said something about "being on the run, running from the cops, something to that effect," which she interpreted as the defendant being on the run. Juror 40 described Syvertson as being something of a chatterbox, and she claimed "[m]ost of the things he said just went in one ear and out the other" because "he did not stop talking for two days." She said Syvertson did not say anything about the guilt or innocence of the defendant.

Svyertson was summoned to the courtroom and confronted with the allegation he had spoken to other jurors about the case in violation of the trial court's order. The trial court explained that a contempt hearing would be held and that Syvertson faced up to 20 days imprisonment and a $1,000 fine. Several days later, the trial court conducted the hearing. Juror 40 testified and responded affirmatively when asked if Syvertson told her he knew about the case. She also testified that Syvertson told her that the defendant "was on the run from the police[,] and the Juror said the word

---

[2] Juror 41 had been excused by that point and was not questioned by the trial court at that time.

"run" was used, but she did not "know if it was running from the police physically or it was being on the run." Juror 41 also testified, but she did not recall Syvertson saying anything about the defendant. Syvertson testified on his own behalf, and he admitted he told jurors that he knew about the case, but denied talking about the facts of the case with any other juror. According to Syvertson, he used the word "run" when talking about an unrelated crime at a gas station.

The trial court found Syvertson in indirect criminal contempt for speaking about the criminal case with at least one other juror. The trial court sentenced Syvertson to five days in jail and imposed a $1,000.00 fine. Syvertson appeals this ruling, arguing among other things that the evidence was insufficient to support a finding of contempt.

Every court has the power to compel obedience to its orders and to control the conduct of persons connected with a judicial proceeding. See OCGA § 15-1-3 (3), (4). One who disobeys an order or command of the court may be found in criminal contempt. See *In re Hadaway*, 290 Ga. App. 453, 457 (659 SE2d 863) (2008) "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." (Citation and punctuation omitted). *In re Thompson*, 339 Ga. App. 106, 109 (1) (793 SE2d 462)

4

(2016). "To prove a criminal contempt, there must be proof beyond a reasonable doubt not only that the alleged contemnor violated a court order, but also that he did so wilfully." (Citation and punctuation omitted). *In re Hadaway*, 290 Ga. App. at 457.

Here, although we are sympathetic to the difficulty faced by the judge in dealing with a challenging juror, we nonetheless find the evidence insufficient to establish the crime of contempt. The trial court found Syvertson in contempt for violating its verbal instruction "not to talk to anyone about the case[,]" which it gave at the end of the first day of jury selection.[3] The instruction was given as jurors were departing for the evening. Although this directive could readily be understood as precluding jurors from discussing the facts of the case after leaving that night, it is not clear that jurors were also barred from discussing the facts of the case amongst themselves the next day and nothing in the record or transcripts indicates that the potential jurors were specifically instructed not to talk about the case amongst themselves or that another instruction was given to the jurors before they had an opportunity to speak to each other the next day.

> Before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the command must therefore be express rather

---

[3] Syvertson testified that he did not recall the instruction being given.

than implied. Furthermore, the very nature of the proceeding in either civil or criminal contempt for an alleged disobedience of a court order requires that the language in the commands be clear and certain.

(Citation and punctuation omitted). *Affatato v. Considine*, 305 Ga. App. 755, 762 (3) (700 SE2d 717) (2010). Because the trial court's instruction, which was given when the potential jurors were departing for the evening, did not clearly and definitely inform Syvertson that he was barred from discussing the case with his fellow jurors, he cannot be convicted for contempt on this basis. See id.

Furthermore, whether Syvertson actually discussed the facts of the case is not entirely clear from the record. Out of the three jurors questioned, only one juror said that Syvertson said "something about being on the run," but her testimony suggests that she was engaging in a degree of conjecture, and there is nothing in the record before us to show that "being on the run" had anything to do with the underlying case. Accordingly, the judgment of contempt must be reversed. See *In re Hayes*, 185 Ga. App. 818, 819 (1) (366 SE2d 204) (1988) (physical precedent only) (noting that a finding of contempt must be supported by facts in the record).

*Judgment reversed. Rickman, C. J., and Dillard, P. J., concur*.

6