## S04A1973. RAMIREZ v. THE STATE.
(608 SE2d 645)

SEARS, Presiding Justice.

The named appellant in this case is Bautista Ramirez, who was found guilty of murder and sentenced to life in prison following a jury trial in which the State was seeking the death penalty. This appeal,

---

however, stems from the trial court's finding that Thomas West, one of Ramirez's attorneys, was in criminal contempt of court for violating an order setting forth certain restrictions on counsel's communication with the press during the course of Ramirez's trial. For the reasons that follow, we reverse the finding of contempt.

1. West's alleged contumacious conduct consisted of a telephone call to a radio station during which West discussed Ramirez's case with the host of the radio show. At the time of the call, Ramirez's trial had been proceeding for several weeks, and West made the call in the morning before the beginning of that day's proceedings. The prosecutor informed the trial court of the call, and the trial court apparently heard a portion of the call live. Before trial began that morning, the trial court informed West that, after the close of trial that day, the court would address whether West had violated the court's restrictive order and whether he was in contempt of court if he had done so. Once the jury had departed that afternoon, the court held a hearing, following which the court found West in criminal contempt and fined him $500.

2. The procedures that a trial court must follow to hold a person in contempt depend upon whether the acts alleged to constitute the contempt are committed in the court's presence (direct contempt) or are committed out of the court's presence (indirect contempt).[1] If the contempt is direct, a trial court has the power, "after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing."[2] This summary power is authorized "where contumacious conduct threatens a court's immediate ability to conduct its proceedings, such as where a witness refuses to testify, or a party disrupts the court."[3] "[D]irect contempts in the presence of the court traditionally have been subject to summary adjudication, 'to maintain order in the courtroom and the integrity of the trial process in the face of an "actual obstruction of justice." ' "[4] In direct contempt proceedings, "[i]n light of the court's substantial interest in rapidly coercing compliance and restoring order, and because the contempt's occurrence before the court reduces the need for extensive factfinding and the likelihood of an erroneous deprivation, summary proceedings

---

[1] *Dowdy v. Palmour*, 251 Ga. 135, 141-142 (304 SE2d 52) (1983); *International Union v. Bagwell*, 512 U. S. 821, 832-834 (114 SC 2552, 129 LE2d 642) (1994); *United States v. Neal*, 101 F3d 993, 997 (4th Cir. 1996).

[2] *Dowdy*, 251 Ga. at 141-142.

[3] *Bagwell*, 512 U. S. at 832. Accord *Dowdy*, 251 Ga. at 141-142; *Neal*, 101 F3d at 997.

[4] *Bagwell*, 512 U. S. at 832, quoting *Codispoti v. Pennsylvania*, 418 U. S. 506, 513 (94 SC 2687, 41 LE2d 912) (1974).

have been tolerated."[5]

As for determining whether an alleged contumacious act was committed in the "presence" of the court for the purpose of imposing summary punishment, the Supreme Court has "stressed the importance of confining summary contempt orders to misconduct occurring in court. Where misconduct occurs in open court, the affront to the court's dignity is more widely observed, justifying summary vindication."[6] In this regard, although OCGA § 15-1-4 (a) (1) provides that a court may impose "summary punishment" for alleged contemptuous conduct committed so near to the presence of the court "as to obstruct the administration of justice," the Court of Appeals of Georgia has properly held that this statement "must yield to the fundamental constitutional right to due process of law."[7] Thus, typically, an alleged contumacious act may only be said to have occurred in the presence of the court, warranting summary contempt proceedings, if the act was committed in open court.[8]

On the other hand, where the alleged contumacious acts are committed outside the court's presence, "the considerations justifying expedited procedures do not pertain."[9] Thus, "[s]ummary adjudication of indirect contempts is prohibited,"[10] and due process requires that a person who is tried for indirect criminal contempt is entitled to "more normal adversary procedures."[11] Among other things, he or she "must be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses."[12] In *Dowdy*, we stated that the attorney sought to be held in contempt must be given "reasonable notice of the specific charges and [an] opportunity to be heard."[13] Moreover, in indirect contempt actions, the trial judge who was presiding over the trial during which the alleged contumacious conduct occurred may preside over the contempt hearing if the "contumacious conduct was not directed toward the judge" and "the judge did not react to the contumacious conduct in such manner as to become involved in the controversy."[14]

---

[5] *Bagwell*, 512 U. S. at 832.

[6] *Pounders v. Watson*, 521 U. S. 982, 988 (117 SC 2359, 138 LE2d 976) (1997).

[7] *McDaniel v. State*, 202 Ga. App. 409, 413 (414 SE2d 536) (1992).

[8] Although we do not intend to foreclose the possibility of ever authorizing summary proceedings in cases of contempt that do not happen in court, it is clear from the foregoing due process discussion that such cases must be the exception rather than the rule.

[9] *Bagwell*, 512 U. S. at 833.

[10] Id.

[11] *Young v. United States*, 481 U. S. 787, 798 (107 SC 2124, 95 LE2d 740) (1987).

[12] Id. at 798-799.

[13] *Dowdy*, 251 Ga. at 142.

[14] Id.

3. In the present case, the trial court's contempt order states that, because the trial court heard a portion of West's call to the radio station, West's alleged contumacious conduct occurred in the presence of the court, thus justifying a direct summary contempt proceeding. This ruling, however, was in error. As previously discussed, for conduct to be considered to have occurred in the court's presence so as to warrant summary contempt proceedings, the conduct must occur in court and "threaten[ ] a court's immediate ability to conduct its proceedings."[15] West's conduct did not occur in open court and did not threaten the court's immediate ability to conduct its proceedings, and his conduct therefore cannot be said to have occurred in the court's presence.

For this reason, West's alleged contumacious conduct constitutes an indirect contempt, and West was entitled, among other things, to reasonable notice of the charges, to counsel of his own choosing, and to the opportunity to call witnesses. Here, we conclude that West was not given reasonable notice of the charges. In a previous criminal contempt case, we held that "personally serving a party with a motion for contempt and a rule nisi 17 days before the show cause hearing complies with the notice requirements of due process."[16] In contrast, in this case, on the morning of trial of a death penalty case, West was informed that he was being charged with contempt and that the hearing on the contempt would occur at the close of trial that day. Because West was in trial all day before the contempt hearing, he did not have time to employ counsel of his own choosing, to discuss the case with counsel, to have counsel review the tape of West's phone conversation with the host of the radio show, to have counsel review the restrictive order in question, and to discuss with counsel whether it was necessary to call any witnesses. Under these circumstances, we cannot conclude that West's contempt hearing complied with due process.

For the foregoing reasons, it is necessary to reverse the trial court's finding of contempt. However, we do not agree with West's contention that the contempt proceeding must be heard by a different trial judge, as our review of the record shows that the "contumacious conduct was not directed toward the judge" and that "the judge did not react to the contumacious conduct in such manner as to become involved in the controversy."[17]

*Judgment reversed. All the Justices concur.*

---

[15] *Bagwell*, 512 U. S. at 832. Accord *Pounders*, 521 U. S. at 988; *Dowdy*, 251 Ga. at 141-142; *Neal*, 101 F3d at 997.

[16] *Hedquist v. Hedquist*, 275 Ga. 188, 189 (563 SE2d 854) (2002), citing *Brown v. King*, 266 Ga. 890, 891 (472 SE2d 65) (1996).

[17] *Dowdy*, 251 Ga. at 142.

DECIDED FEBRUARY 7, 2005.

*Dwight L. Thomas, Caprice R. Jenerson,* for appellant.
*Jeffrey H. Brickman, District Attorney, Mike McDaniel, Robert M. Coker, Assistant District Attorneys,* for appellee.
*Brian Steel,* amicus curiae.