**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 2, 2017**

# In the Court of Appeals of Georgia

A16A1501. IN THE INTEREST OF K. J. et al., children.

McMILLIAN, Judge.

During a judicial review hearing in a juvenile dependency case, the court sua sponte found the children's mother, Haley Weaver, to be in criminal contempt after she tested positive for drugs. Weaver appeals, contending that (1) the evidence was insufficient to support the finding of contempt and (2) the juvenile court erred in finding her in contempt without first providing her with notice and a hearing. For the reasons set forth below, we affirm.

For a contempt finding to constitute criminal contempt, rather than civil contempt, the trial court must impose unconditional punishment for a contumacious act, such as conduct that interferes with the court's ability to administer justice. See *Moton v. State*, 332 Ga. App. 300, 301 (772 SE2d 393) (2015). "On appeal of a

criminal contempt conviction the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted.) *In re Liles*, 278 Ga. App. 496, 496 (629 SE2d 492) (2006).

So viewed, the evidence shows that on January 26, 2016, Weaver appeared with counsel in Lumpkin County Juvenile Court for a hearing in her children's dependency case. Prior to the hearing, the parties reviewed the dispositional report and the case plan. At the hearing, through her attorney, Weaver consented to the putative father's legitimation petition and stipulated to entry of the dispositional report. The court inquired into Weaver's progress on her case plan, and the Department of Family and Children Services indicated that it intended to ask Weaver to take a drug screen that day. The juvenile court then asked Weaver if she was willing to take a drug screen. Weaver agreed, and the court recessed in order for her to do so.

Weaver's drug screen was positive for "oxy, opiates, THC, amphetamines, and methamphetamines."[1] Weaver did not dispute the results of the screen, and her attorney stated that she had admitted to using marijuana and pain pills in the recent past. Weaver declined the opportunity to speak on her own behalf to the court. The juvenile court then found Weaver in contempt because she had appeared in court in an impaired condition, thus interfering with the court's ability to do business and making it impossible to complete the hearing. Although trial counsel asserted that Weaver had been cooperative and was able to participate in the case and articulate her wishes, counsel conceded that he would not have been able to call her as a witness if there had been a need for her to testify. As a result, the juvenile court found that, by having come to court in an impaired condition, Weaver had limited the court's ability to complete its business, ordered Weaver into custody for 48 hours, and continued the hearing.

1. Weaver contends that the juvenile court lacked sufficient evidence to find her in contempt because there was no evidence that she was impaired such that she disrupted the court's business.

---

[1] The witness who testified regarding Weaver's drug screen was not tendered as an expert and did not offer any evidence regarding whether the screen was reliable or when the drugs might have been ingested.

3

"[T]he broad authority of a judge to preserve good order in the courtroom by the use of contempt power is well recognized and must be preserved if the courts are to perform their public duty." (Citation, punctuation and footnote omitted.) *In re Jefferson*, 283 Ga. 216, 217 (657 SE2d 830) (2008) (punctuation omitted). Pursuant to OCGA § 15-11-31 (a), a juvenile court may find an adult in contempt for "willfully disobeying an order of the court or for obstructing or interfering with the proceedings of the court or the enforcement of its orders."

While there is no evidence that Weaver engaged in outbursts, the statute merely requires that she obstructed or interfered with court proceedings. See OCGA § 15-11-31 (a). Weaver asserts that the business before the court had been concluded prior to the drug screen. However, while the parties had nothing further to present, the juvenile court had questions concerning why Weaver had not been communicating with the Department, had not been visiting at least one of the children, and tellingly, why she had not submitted to a drug screen. The court apparently felt that it could not go forward with addressing these concerns without having Weaver screened for drugs and halted the hearing for that purpose. More specifically, the juvenile court found in its contempt order that Weaver "appeared to the Court, from the commencement of the hearing, to be under the influence of a substance." This finding was based, in

4

part, "on its observation of her demeanor and the test results, including the comprehensive nature of [the] drugs for which [Weaver] tested positive." Although the dissent acknowledges that it must "credit" these findings, it appears to give more credit to Weaver's counsel's statement that she had been able to assist him, even though counsel conceded that he would not have been able to call her as a witness. See generally *In re Bowens*, 308 Ga. App. 241, 243 (1) (706 SE2d 694) (2011) ("[I]n a contempt hearing before a judge sitting as the trier of fact, the hearing judge, and not the appellate court, determines the credibility of witnesses."). Given the juvenile court's observations, the testimony that Weaver had a positive drug screen that day, as well as the continuation of the hearing, a rational trier of fact could have found beyond a reasonable doubt that Weaver interfered with the proceedings of the court by appearing in court at her children's dependency hearing while under the influence of drugs.

2. Weaver contends that the juvenile court deprived her of due process because it issued an order of contempt against her without first providing her with notice of the contempt charge and time to prepare a defense.

"The procedures that a trial court must follow to hold a person in contempt depend upon whether the acts alleged to constitute the contempt are committed in the

5

court's presence (direct contempt) or are committed out of the court's presence (indirect contempt)." *Ramirez v. State*, 279 Ga. 13, 14 (2) (608 SE2d 645) (2005). If the contempt is direct, a trial court may, after affording the person charged with contempt an opportunity to speak, announce punishment summarily and without further notice or hearing. Id. This summary adjudication is authorized

> where contumacious conduct threatens a court's immediate ability to conduct its proceedings, such as where a witness refuses to testify, or a party disrupts the court. Direct contempts in the presence of the court traditionally have been subject to summary adjudication, to maintain order in the courtroom and the integrity of the trial process in the face of an actual obstruction of justice.

(Citations and punctuation omitted.) Id. See also *Dowdy v. Palmour*, 251 Ga. 135, 141-42 (2) (b) (304 SE2d 52) (1983) ("During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing."). Where the alleged acts of contempt occur outside of the court's presence, the considerations justifying summary adjudication do not pertain, and due process requires that a person charged with indirect contempt

6

"be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses." (Citation and punctuation omitted.) *Ramirez*, 279 Ga. at 15 (2).

An act of direct contempt occurs if the act is committed in open court. *Ramirez*, 279 Ga. at 15 (2). Weaver asserts that her alleged acts of contempt occurred outside the courtroom when she consumed the drugs that caused her to fail her drug screen. However, the record is clear that the juvenile court found her in contempt for *appearing in court* while impaired. The act of appearing in court in an impaired state is a direct contempt. See *Hayes v. State*, 298 Ga. App. 419, 423 (2) (680 SE2d 508) (2009) (physical precedent only) (The defendant appearing in court with alcohol in his system "occurred, if at all, in the judge's presence in open court" and was therefore a direct contempt.).

Relying on *Newton v. Golden Grove Pecan Farm*, 309 Ga. App. 764 (711 SE2d 351) (2011), Weaver asserts that, even if her contumacious acts were direct, the court was not entitled to engage in summary adjudication because she was not disruptive and, thus, her impaired condition did not prevent the juvenile court from conducting its business. *Newton* is distinguishable. In that case, this Court held that, even if the preparation and filing of bankruptcy petitions in federal court could be considered

7

direct contempt, summary adjudication was not warranted because the filing of the petitions several months earlier posed no immediate threat to the trial court's ability to conduct its proceedings. See id. at 769-70 (1).

In this case, Weaver posed an immediate threat to the juvenile court's ability to conduct its proceedings because she appeared at a hearing in her children's dependency case under the influence of drugs. "Where misconduct occurs in open court, the affront to the court's dignity is more widely observed, justifying summary vindication." (Citation and punctuation omitted.) *Ramirez*, 279 Ga. at 15 (2). Weaver declined the opportunity to speak on her own, the court found her in contempt, and her trial counsel presented arguments on her behalf. Because Weaver's act of contempt occurred in open court and she was afforded an opportunity to speak on her own behalf, the juvenile court did not violate her due process rights.

*Judgment affirmed. Barnes, P. J., Miller, P. J., Dillard, P. J., Branch, Mercier and Bethel, JJ., concur.  Ellington, P. J., concurs in judgment only. McFadden, P. J., dissents.*

8

A16A1501. IN THE INTEREST OF K. J. et al., children.

MCFADDEN, Presiding Judge, dissenting.

The evidence does not support the juvenile court's finding that Haley Weaver was in criminal contempt during a judicial review hearing, so I respectfully dissent from Division 1 of the majority opinion. I would not reach the matters addressed in Division 2.

Juvenile courts are authorized to "punish an adult for contempt of court . . . for obstructing or interfering with the proceedings of the court[.]" OCGA § 15-11-31 (a). I would not condone coming to court impaired. But the record before us does not support a finding that Weaver "obstruct[ed] or interfer[ed] with the proceedings."

"Criminal contempt is a crime in the ordinary sense and the evidence of the contempt must be beyond a reasonable doubt. Contempt is a drastic remedy which

ought not to deprive one of her liberty unless it rests upon a firm and proper basis." *In re Harris*, 289 Ga. App. 334, 336 (1) (657 SE2d 258) (2008) (citations and punctuation omitted). "On appeal of a criminal contempt conviction the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *In re Beckstrom*, 295 Ga. App. 179 (671 SE2d 215) (2008).

The hearing at issue was brief. On January 26, 2016, Weaver appeared with her attorney. Counsel for the Department of Family and Children Services tendered a proposed case plan to which all had consented. Counsel for the children's father asked that his petition to legitimate be granted. Through her counsel, Weaver consented; and the trial court granted it. The parties then reported that they had nothing further.

At that point the court asked the department's attorney about the dispositional report, including the indication that Weaver had not submitted to a drug screen. The department's attorney responded, focusing on the issue of the mother's engagement with the children, but also stating that the department had not been able to reach the mother for a drug screening and that it was going to ask Weaver to take a screen that

day. Asked to respond, Weaver's counsel followed the lead of the department's counsel and addressed engagement and visitation with the children.

The judge then addressed Weaver directly. He asked if she was willing to agree to the department's request for a drug screen that day. Weaver replied, "Yes, sir." The judge ordered Weaver not to leave the courtroom until the screener was ready to take her for the drug screening. He again addressed her, rather than her counsel, and asked if she understood. Weaver again replied, "Yes, sir." Thereafter, the judge ordered Weaver to go with the screener. After the screening was completed, the parties returned to the courtroom and the screener announced the results were "non-negatives for oxy, opiates, THC, amphetamines, and methamphetamines."

The judge asked Weaver if she wished to be heard, and her counsel answered on her behalf, stating that she was not in a position to dispute the results, that she had admitted using marijuana and pain pills in the past few weeks, but that she could not explain the methamphetamine. Despite counsel's response on his client's behalf, the juvenile court judge again asked Weaver directly if she would like to explain the results. She replied, " No, thank you."

The judge then announced his finding that she was in contempt and ordered that she be immediately taken into custody. The judge stated that his reason for the

3

contempt ruling was that she was in an impaired condition which limited her ability "to communicate effectively with your attorney so that he can represent what your wishes really are," and that she had thereby impeded the court's ability to do business.

Weaver's counsel asked the judge to reconsider the ruling, stating in his place that she had been able to articulate her wishes to him and to participate in the case. The judge responded to counsel's request by again addressing Weaver directly, "All right. Ma'am, you're in the custody of the sheriff." The judge then ordered the case continued until February 2, 2017. The day after the review hearing, the juvenile judge entered a written contempt order finding, on the basis of his "observation of her demeanor and the test results" that Weaver had been impaired and that her impairment "render[ed] her unable to proceed, making it impossible for the [c]ourt to conduct the scheduled hearing, which was continued due to her impairment." The court concluded that "[h]er conduct thus falls under OCGA § 15-11-31 (a) in that she interfered with the proceedings of the court."

Weaver did not attend the continued hearing on February 2, 2016, and her attorney waived her presence. The judge issued a judicial review order, adopting in

4

full the case plan that the parties had agreed to and that had been tendered at the outset of the January 26 hearing.

As noted above, OCGA § 15-11-31 (a) authorizes juvenile courts to impose contempt sanctions upon an adult "for obstructing or interfering with the proceedings of the court[.]" Contrary to the juvenile court's findings in this case, there is no evidence that Weaver obstructed or interfered with the review hearing. On the contrary, the record plainly shows that she was present and fully participated in the hearing through her attorney. While the drug screen showed the presence of some unspecified level of certain drugs in her body, and while we must credit the court's finding that some signs of impairment could be discerned from observation of her demeanor, there is no evidence that Weaver was impaired to the extent that she somehow interfered with the proceedings. Her counsel stated in his place that she had been able to assist him. So the mere presence of some unidentified level of drugs in Weaver's body "was insufficient to establish contempt beyond a reasonable doubt." *Hayes v. State*, 298 Ga. App. 419, 424 (2) (680 SE2d 508) (2009) (finding that evidence that defendant appeared in court smelling of alcohol and with alcohol in his system was insufficient to establish contempt beyond a reasonable doubt). See also *Moody v. State*, 131 Ga. App. 355, 357 (1) (206 SE2d 79) (1974) (defendant, who

5

was brought to court by law enforcement officers and not on her own volition, was not subject to contempt merely for appearing there in a drunken condition).

The January 26 hearing was continued, not because of Weaver's condition, but because the judge chose to incarcerate her even though she had in no way interfered with the proceedings. Unlike in *Hayes*, supra, where the possibility of impairment "led the trial court to vacate Hayes' earlier plea," *Hayes v. State*, 298 Ga. App. 419, 423, 680 S.E.2d 508, 512 (2009), nothing compelled the trial court to continue the hearing. Indeed, when she did not appear at the continued hearing, the court simply proceeded in her absence and adopted the case plan agreed to by the parties at the start of the original hearing.

Because there is no evidence that Weaver interfered with the court, the judgment of contempt should be reversed.