**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 13, 2020**

# In the Court of Appeals of Georgia

A19A1723. IN RE ADAMS et al.

MCFADDEN, Chief Judge.

This appeal challenges findings of direct criminal contempt against two attorneys. Because the trial court's summary contempt proceeding violated due process and there was insufficient evidence to support the findings of contempt, we reverse.

1. *Facts and procedural posture.*

Attorneys Jason Adams and Shaudi Khansari represented Jasmine Brown at her criminal trial. At the start of the trial, Adams invoked the rule of sequestration, and the trial judge instructed any witnesses in the case to leave the courtroom. The state then presented its case-in-chief and rested.

As the defense called its first witness, who was located in a conference room adjacent to the courtroom with another defense witness, the judge stated that the door to the conference room had not been closed. The judge sent the jurors to the jury room, brought the two defense witnesses into the courtroom, and asked them how long they had been in the conference room. Both witnesses indicated that they had been in the room approximately two hours. The judge asked if they had been able to hear her voice from the conference room. One of the witnesses said, "A little, but I wasn't paying attention." And the other witness replied, "It goes, but it wasn't clear."

Without any further inquiry into the matter, the judge then asked the prosecuting attorney if there was a motion from the state. The prosecutor did not make a motion, but said that there was a question about whether the rule of sequestration had been violated and began discussing that one of the defense witnesses was also charged in the case. As the prosecutor was speaking, the trial judge cut her off and sua sponte declared a mistrial. The judge then called the jurors back into the courtroom, told them that there was a mistrial because there had been a violation of the rule of sequestration, and dismissed the jury.

After the jury had left, the trial judge summarily held Adams and Khansari in direct contempt of court based on her findings that the two witnesses had violated the

judge's order of sequestration and that the attorneys were responsible for such violations. After announcing her holdings of contempt, the judge denied Adams' request that both he and Khansari be afforded a hearing at a later date and representation by counsel. Instead, the judge gave the attorneys an opportunity to make a statement regarding her finding of contempt, and after both Adams and Khansari denied being in contempt, the judge reiterated her earlier holding and fined each of them $175.

Three days later, the judge issued a written contempt order explaining "that it was within the power of each Defense Counsel to instruct their witnesses regarding the order sequestering them, to direct their witnesses to an appropriate location out of hearing range for purpose of sequestration, and to generally monitor their witnesses and surroundings to ensure that the Court's order was not violated." The attorneys filed a motion for reconsideration, which the trial court summarily denied. Adams and Khansari appeal.[1]

2. *Summary contempt proceeding.*

---

[1]An appeal from the denial of Brown's plea in bar on double jeopardy grounds is also before this court. See *Brown v. State*, Case No. A19A2359.

3

The appellants contend that the trial court's summary contempt proceeding violated due process. We agree because contrary to the trial court's finding, the alleged conduct by the attorneys did not constitute direct contempt of court subject to summary adjudication.

> The procedures that a trial court must follow to hold a person in contempt depend upon whether the acts alleged to constitute the contempt are committed in the court's presence (direct contempt) or are committed out of the court's presence (indirect contempt). If the contempt is direct, a trial court has the power, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing. This summary power is authorized where contumacious conduct threatens a court's immediate ability to conduct its proceedings, such as where a witness refuses to testify, or a party disrupts the court. Direct contempts in the presence of the court traditionally have been subject to summary adjudication, to maintain order in the courtroom and the integrity of the trial process in the face of an actual obstruction of justice. In direct contempt proceedings, in light of the court's substantial interest in rapidly coercing compliance and restoring order, and because the contempt's occurrence before the court reduces the need for extensive factfinding and the likelihood of an erroneous deprivation, summary proceedings have been tolerated.
>
> As for determining whether an alleged contumacious act was committed in the presence of the court for the purpose of imposing summary punishment, the Supreme Court has stressed the importance of confining summary contempt orders to misconduct occurring in court. Where misconduct occurs in open court, the affront to the court's dignity is more widely observed, justifying summary vindication. In this regard, although OCGA § 15-1-4 (a) (1) provides that a court may impose summary punishment for alleged contemptuous conduct committed so near to the presence of the court as to obstruct the

4

administration of justice, the Court of Appeals of Georgia has properly held that this statement must yield to the fundamental constitutional right to due process of law. *Thus, typically, an alleged contumacious act may only be said to have occurred in the presence of the court, warranting summary contempt proceedings, if the act was committed in open court.*

On the other hand, where the alleged contumacious acts are committed outside the court's presence, the considerations justifying expedited procedures do not pertain. Thus, summary adjudication of indirect contempts is prohibited, and due process requires that a person who is tried for indirect criminal contempt is entitled to more normal adversary procedures. Among other things, he or she must be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses.

*Ramirez v. State*, 279 Ga. 13, 14-15 (2) (608 SE2d 645) (2005) (citations and punctuation omitted; emphasis supplied).

In this case, there was no contumacious conduct by the attorneys in open court. Indeed, the trial judge made no finding that the attorneys intentionally violated or refused to comply with the order of sequestration in open court; rather, the judge premised her finding of contempt on each attorney's purported failures to instruct their witnesses regarding the order sequestering them, to direct their witnesses to an appropriate location for sequestration, and to generally monitor their witnessess. As the trial judge acknowledged, she was unaware that the witnesses were in the conference room until attorney Adams called them to testify for the defense. So it is

5

clear that the purported misconduct by the attorneys with regard to their witnesses being in the conference room occurred outside the presence of the judge.

Because the attorneys' alleged acts did not occur in open court, this is not a case in which summary contempt proceedings were appropriate based on an "occurrence [of direct contempt] before the court [that] reduce[d] the need for extensive factfinding[.]" *Ramirez*, supra at 14 (2) (citation and punctuation omitted). On the contrary, the alleged conduct in this case, committed outside the judge's presence, required extensive findings of fact to determine exactly what each attorney did or did not do with regard to sequestering the witnesses; to determine whether either of the two defense witnesses actually heard testimony of other witnesses from the conference room, and if so, precisely what testimony was heard; and to determine if there was in fact a violation of the sequestration order, and if so, whether Adams or Khansari had any knowledge of it.

Under these circumstances, summary adjudication was improper and "due process required that [each attorney's] contempt hearing be conducted by another judge." *Dowdy v. Palmour*, 251 Ga. 135, 142 (2) (304 SE2d 52) (1983) (reversing finding of direct contempt against two attorneys for allowing their witnesses to remain in the courtroom after the judge had ordered sequestration of all witnesses).

6

Because Adams and Khansari were denied their due process rights to a hearing before another judge, the findings of contempt against them must be reversed.

3. *Sufficiency of the evidence.*

"Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *In re Thompson*, 339 Ga. App. 106, 109 (1) (793 SE2d 462) (2016) (citation and punctuation omitted). "To prove a criminal contempt, there must be proof beyond a reasonable doubt not only that the alleged contemnor violated a court order, but also that he did so wilfully." *In re Hadaway*, 290 Ga. App. 453, 457 (659 SE2d 863) (2008) (citation and punctuation omitted). "On appeal of a criminal contempt conviction the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Murphy v. Murphy*, 330 Ga. App. 169, 176 (6) (a) (ii) (767 SE2d 789) (2014) (citation and punctuation omitted).

Viewed in that light, the evidence does not show beyond a reasonable doubt that either Adams or Khansari wilfully violated the trial court's order of sequestration. As an initial matter, there is no evidence that the sequestration order

was in fact violated by either of the two defense witnesses who were in the conference room. The rule of sequestration provides that "at the request of a party the court shall order witnesses excluded so that each witness cannot hear the testimony of other witnesses, and it may make the order on its own motion." OCGA § 24-6-615. "The purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion." *Jones v. State*, 302 Ga. 488, 493 (3) n. 5 (807 SE2d 344) (2017) (citation and punctuation omitted).

Here, the record shows at most that the two witnesses could hear the judge's voice at some point while they were in the conference room, although there is no evidence that any particular comments by the judge were in fact heard by either of the witnesses. Moreover, there is no evidence that they heard the testimony of any other witnesses. Even if a rational trier of fact could infer from the fact that the two witnesses could hear the judge's voice that they also could have possibly heard the voices of testifying witnesses, there is no evidence as to any specific testimony that was actually overheard and certainly no evidence that the defense witnesses heard anything that would have shaped their own testimony or resulted in fabrication and collusion. Indeed, there is not even any evidence as to what the two defense witnesses

8

own testimony would have been. Because there is not evidence beyond a reasonable doubt that the defense witnesses violated the order of sequestration directed toward them and the other witnesses, it follows that attorneys Adams and Khansari could not be found in contempt beyond a reasonable doubt for being responsible for such a purported violation.

And even if there was sufficient evidence that either of the two defense witnesses had violated the order of sequestration, there is not evidence beyond a reasonable doubt that either Adams or Khansari wilfully assisted or was otherwise responsible for any such violation. At most, the record shows that both Adams and Khansari knew that their two witnesses were in the conference room and that Adams had directed the defense witnesses there for sequestration in order to separate them from the state's witnesses (the underlying criminal case arose out of a confrontation between two groups of people). But there is no evidence that either attorney knew of any trial testimony being overheard by their witnesses. In short, there simply is not evidence beyond a reasonable doubt "that either [Adams or Khansari] wilfully violated the [sequestration] order. . . . Accordingly, the trial court's judgment finding them in contempt must be reversed.*" In re Hardaway*, supra at 457-458.

9

*Judgment reversed. Senior Appellate Judge Herbert E. Phipps concurs. McMillian, P.J. dissents.\**

**THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**

MCMILLIAN, Presiding Judge, dissenting.

Because counsel's actions occurred in open court and was thus a matter of direct contempt and the evidence supported the trial court's order finding of criminal contempt, I must respectfully dissent.

1. The Georgia Constitution provides that "[e]ach court may exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments[.]" Ga. Const. of 1983, Art. VI, Sec. I, Par. IV. Along with this constitutional authority, Georgia statutory law also provides that "[e]very court has power . . . [t]o compel obedience to its judgments, orders, and process and to the orders of a judge out of court in an action or proceeding therein[]" and "[t]o control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto[.]" OCGA § 15-1-3 (3) & (4). Therefore, courts in this state have the inherent power to enforce their orders through contempt. See *In re Jefferson*, 283 Ga. 216, 217 (657 SE2d 830) (2008). "Contempt of court, in its broad sense, means disregard for or

disobedience of the order or command of the court; this also includes the interruption of court proceedings." (Citation and punctuation omitted.) *In re Williams*, 347 Ga. App. 189, 189-90 (818 SE2d 260) (2018).

The trial court found that counsel's actions constituted direct contempt. "Contumacious conduct occurring directly in front of the judge is punishable as direct criminal contempt of court." *In re Scheib*, 283 Ga. App. 328, 329 (641 SE2d 570) (2007). "If the contempt is direct, a trial court has the power, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing." (Citation and punctuation omitted.) *Ramirez v. State*, 279 Ga. 13, 14 (2) (608 SE2d 645) (2005). See also OCGA § 15-1-4 (a) (1) & (3).[1] That is because "[w]here misconduct occurs in open court, the affront

---

[1] OCGA § 15-1-4 provides in relevant part:

(a) The powers of the several courts to issue attachments and inflict summary punishment for contempt of court shall extend only to cases of:

(1) Misbehavior of any person or persons in the presence of such courts or so near thereto as to obstruct the administration of justice; . . .

(3) Disobedience or resistance by any officer of the courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree, or command of the courts . . . ."

2

to the court's dignity is more widely observed, justifying summary vindication."

(Citation and punctuation omitted.) *In Interest of K. J.*, 340 Ga. App. 468, 471 (2)

(798 SE2d 9) (2017). See also *Ramirez*, 279 Ga. at 15 (2).

> This summary power is authorized where contumacious conduct
> threatens a court's immediate ability to conduct its proceedings, such as
> where a witness refuses to testify, or a party disrupts the court. . . . In
> direct contempt proceedings, in light of the court's substantial interest
> in rapidly coercing compliance and restoring order, and because the
> contempt's occurrence before the court reduces the need for extensive
> factfinding and the likelihood of an erroneous deprivation, summary
> proceedings have been tolerated.

(Citations and punctuation omitted.) Id. at 14-15 (2). See also *Dowdy v. Palmour*, 251

Ga. 135, 141-42 (2) (b) (304 SE2d 52) (1983) (adopting due process requirements set

out in *Taylor v. Hayes*, 418 U.S. 488 (94 SCt 2697, 41 LE2d 897) (1974)).

Here, counsel's actions occurred in the trial court's immediate presence and

threatened the court's ability to conduct its proceedings. The record shows that the

trial court issued the sequestration order in open court at the beginning of the jury

trial. Despite this order, Adams admitted that counsel placed the witnesses in the

3

shelter room intentionally to separate them from other witnesses. The shelter room opened directly into the courtroom, and the trial judge could see the shelter room door from the bench. The judge was aware that the door had an automatic closing mechanism, and she observed that it had, in fact, been propped open to the courtroom during the trial and that two witnesses emerged from that open doorway straight into the courtroom. The trial judge also observed from the vantage point of the bench that counsel went in and out of the shelter room during the State's case.

Under the circumstances, I would find that the trial court was entitled to consider the matter as one of direct contempt, and as counsel were then given the opportunity to be heard on their own behalf before the trial court issued its final order of contempt and imposed sanctions, they were not entitled to further notice or hearing or to counsel. See *K. J.*, 340 Ga. App. at 471 (summary finding of direct contempt upheld where contemnor appeared in court while impaired); *Lee v. State*, 283 Ga. App. 369, 371 (2) (641 SE2d 615) (2007) (after giving attorney ample opportunity to explain his refusal to obey the command that he defend his client at trial, judge committed no error in imposing summary punishment for direct contempt of court); *In re Willis*, 259 Ga. App. 5, 7 (2) (576 SE2d 22) (2002) (Contemnor's due process rights were not violated by trial court's summary finding of direct contempt even

4

where he requested counsel because "no right to counsel exists at a summary contempt hearing.") (citation omitted). Compare *Williams*, 347 Ga. App. at 192 (finding of direct contempt reversed where no evidence in the record that contemnor was given the opportunity to speak on her own behalf); *In re Schoolcraft*, 274 Ga. App. 271, 273 (1) (617 SE2d 241) (2005) (where case did not involve direct summary adjudication, but rather a delayed announcement of punishment, recusal required because inference arose that judge had become involved in the controversy "as he necessarily applied his impressions" from prior hearings).

2. Additionally, I believe that there was sufficient evidence to support the trial court's finding that counsel's conduct was in willful violation of the court's order beyond a reasonable doubt.

> In order to establish criminal contempt for violation of a court order, there must be proof beyond a reasonable doubt not only that the alleged contemnor violated a court order, but also that he did so wilfully. And to show wilfulness, there must be proof beyond a reasonable doubt that the alleged contemnor had the ability to comply with the court order: It is essential to constitute a contempt that the thing ordered to be done be within the power of the person against whom the order is directed.

(Citation and punctuation omitted.) *In re Bowens*, 308 Ga. App. 241, 242 (1) (706 SE2d 694) (2011).

The record shows that after counsel requested sequestration, the trial court issued an order directing that all witnesses leave the courtroom, and it is undisputed that counsel had the ability to comply with this order. From the trial judge's vantage point, she could observe that during the trial, the door leading directly from the shelter room into the courtroom was propped open and that counsel had gone in and out of it repeatedly. After the trial court directed the deputy to sound for the witness, Adams informed the judge that the witness was in that room, and Khansari echoed, "Yes." Adams then immediately stated, "I separated the parties." This evidence entitled the judge to find that Adams had placed the witnesses in the shelter room when he separated the parties and that both counsel had intended for them to remain there, in a room with a door propped open to the courtroom. The witnesses had been in that room for two hours and admitted that they could hear, at least to some extent, what the trial judge said during the trial.

Based on this evidence, the trial court was authorized to hold counsel in contempt based on a finding that they acted in willful defiance of her sequestration order by keeping their witnesses in a room that allowed them to overhear the court

6

proceedings. See *Davis v. State*, 299 Ga. 180, 188 (2) (787 SE2d 221) (2016) (citing the guilty party for contempt is appropriate response to a violation of the rule of sequestration); *Britt v. State*, 282 Ga. 746, 751 (2) (653 SE2d 713) (2007) (trial court properly found attorneys to be in direct criminal contempt when they refused to comply with the court's lawful order); *Williams v. State*, 308 Ga. App. 296, 298 (707 SE2d 532) (2011) ("Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this[,]"so that such a finding will be upheld even where the supporting evidence "is exceedingly weak and unsatisfactory[.]") (citation omitted).

In holding otherwise, the majority misapplies the "any evidence" standard of review for criminal contempt, first, by ignoring the admission of both counsel that they knew the witnesses were in the shelter room and Adams's admission in that context that he had separated the parties. Moreover, the majority improperly discounts the judge's ability to observe the situation for herself, something this Court cannot do. Throughout the trial, the judge saw the shelter room door propped open and observed counsel as they went in and out of the room. Both witnesses who later emerged from the room admitted that they could hear something of the court proceedings, and the judge was in the best position to determine whether a witness

7

sitting in the partially opened shelter room could have heard testimony, as she knew the distance from the shelter room to the witness stand and heard the volume of the testimony for herself. In fact, she stated that she could hear the witnesses in the shelter room from the bench as they were preparing to leave it. Likewise, the issue of intent was for the judge as the trier of fact, and she was best qualified to determine whether counsel had acted willfully based on her own observations of their conduct, demeanor, and attitude. See *Bowman v. State*, 306 Ga. 97, 99 (1) (a) (829 SE2d 139) (2019) (Criminal intent may be found based "'upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.' OCGA § 16-2-6."). Cf. *Crute v. Crute*, 86 Ga. App. 96, 99 (70 SE2d 727) (1952) (upholding, under abuse of discretion standard, finding of direct criminal contempt based, in part, on judge's position to observe the conduct, demeanor, and attitude of contemnor).

Accordingly, I would affirm the trial court's order of contempt.