320 Ga. 184
FINAL COPY

S24A1245. STEEL v. THE STATE.

PETERSON, Presiding Justice.

A trial court found attorney Brian Steel in contempt of court for refusing to tell the court how he learned about the court's ex parte hearing with a witness and prosecutors in a case in which Steel is representing one of the defendants. Steel appeals from that contempt order, arguing that the evidence did not support a contempt finding because he did not interfere with the court's administration of justice, his information was protected by attorney-client privilege, and due process required the judge to recuse from the contempt proceeding. Because the court delayed punishment, the alleged disobedience was directed toward the court, and the court was involved in the controversy that formed the basis of the contempt, due process required the judge to recuse from the contempt proceeding. We therefore reverse the judgment of contempt imposed by the trial court.

1. The record shows the following. Steel represents a defendant, Jeffery Williams, in an ongoing criminal case charging multiple defendants with, among other things, participation in a criminal street gang and conspiracy to violate Georgia's Racketeer Influenced and Corrupt Organizations Act.[1] In June 2024, Fulton County Superior Court Chief Judge Ural Glanville was presiding over the trial. During the trial, Judge Glanville found one of the State's witnesses in contempt for exercising his Fifth Amendment privilege against compelled self-incrimination — essentially refusing to testify — despite having been given immunity from prosecution. Judge Glanville adjourned the trial on a Friday and stated he would resume the trial the following Monday and ask the witness, outside of the jury's presence, whether the witness would testify.

The following Monday morning, Judge Glanville held an ex parte meeting with the witness, the witness's counsel, and State

---

[1] Although several of the defendants were charged with murder, Williams was not.

prosecutors and investigators to discuss whether the witness would testify for the State. The meeting, taken down by a court reporter and transcribed for the record, took place in Judge Glanville's chambers and comprised most of the morning, at the end of which the witness said he would testify. The witness gave limited testimony before a lunch recess was taken.

Following the recess, Steel informed Judge Glanville that Steel had learned about the ex parte meeting and moved for a mistrial. Judge Glanville stated that he was "disturbed because that is *ex parte*" and repeatedly asked Steel to reveal the source of his information, informing Steel that "if you don't tell me how you got this information, then you and I are going to have some problems." Steel refused to reveal his source, and Judge Glanville told Steel that it was "disturbing that somehow you have surreptitiously gotten information in regard to the Court's private ex parte conversation with a party." Judge Glanville repeatedly told Steel that he was going to hold him in contempt if Steel did not tell him who disclosed the ex parte meeting. Steel claimed that the

information was covered by attorney-client privilege; challenged by Judge Glanville, Steel also said it was attorney work product. Judge Glanville then took a recess.

Upon returning to the bench, Judge Glanville told Steel that there was "only one way you could have gotten" the information and that it was not work product. Judge Glanville again asked Steel to reveal his source, and said he was going to hold Steel in contempt if Steel refused. Steel said he did not want to be held in contempt, and Judge Glanville responded, "I don't want to hold you in contempt but you — this is so sacrosanct to have a conversation in my chambers parroted to you and others. It is that serious." Steel asserted that he could not comply with the court's order without violating Rule 1.6 of the Georgia Rules of Professional Conduct ("Rule 1.6"), which states in part that a lawyer "shall maintain in confidence all information gained in the professional relationship with a client[.]" Judge Glanville rejected this argument and stated, "I'm going to hold you in contempt and you can think about it[,]" adding that "at 5:00 today[,] we'll see where you are, where you stand on that point[.]"

4

Judge Glanville told Steel that he was not asking for the "sum and substance of what was said," only for how Steel learned about the meeting. Steel responded, "I can't do that."

Judge Glanville then told Steel, "I don't want to hold you in contempt but this is that serious. . . . You cannot eavesdrop and get information that was not meant for you to hear[.]" Steel said he would "do whatever you want until 5:00 or thereafter," but maintained that the matter was serious enough to warrant a hearing and then moved for a mistrial. When Steel said he wanted to get to "the substance [of the ex parte conversation] first," Judge Glanville responded that Steel would "be in custody until [5:00 p.m.] because you need to tell me how you got the information." There was a brief back and forth about how Steel possibly learned of the information and whether it was privileged before Judge Glanville said, "I'm not going to have any further conversation . . . with you about this. I want to know — the question still remains. I want to know how — who gave you this information." Judge Glanville then said, "He can go into custody at this point in time."

Steel was not immediately taken into custody. He made additional arguments in support of a mistrial and repeated his argument that he could not disclose his source without breaching Rule 1.6. Judge Glanville told Steel that he could not "hide behind" Rule 1.6. Steel said he was not "hiding behind anything" and continued to ask why he was excluded from the ex parte hearing. The prosecutor then made several arguments as to why the ex parte meeting was not improper and why the information at issue was not protected by Rule 1.6.

Steel's co-counsel then addressed Judge Glanville, informing him that co-counsel was also in possession of the same information Steel received, and that the trial should not continue until the court resolved the ex parte issue. Steel's co-counsel renewed the motion for mistrial, which other defendants joined. Judge Glanville denied all of those motions and said he was going to proceed with the trial. Steel's co-counsel said he would not participate in the trial without Steel and without the court addressing the ex parte issue. Judge Glanville responded, "Sir, you-all are really getting yourselves cross-

purposes at this point in time. . . . You made some things out of nothing. I think that you are on very precarious ground at this point in time." Judge Glanville said that he would continue with the trial and co-counsel could represent Williams. Co-counsel again asked Judge Glanville to address the ex parte issue, but Judge Glanville refused. Judge Glanville then ordered Steel to be taken into custody. As he was being taken away, Steel asked to say "one thing," clarifying that Judge Glanville was denying Williams his right to counsel and again moved for a mistrial. Judge Glanville denied the motion and said the court was going to take a five-minute recess.

When proceedings resumed without Steel present, Judge Glanville ordered co-counsel to continue representing Williams and said co-counsel could consult with Steel on breaks. Co-counsel said he would not although he "respect[ed] the Court has to do whatever it believes appropriate." One of the State's prosecutors suggested to Judge Glanville that he fashion a contempt punishment that would still allow Steel and co-counsel to continue representing Williams, so as not to interfere with Williams's right to counsel. Judge

7

Glanville agreed.

Other defendants continued to press for a transcript of the ex parte meeting, refusing to accept the representations of the trial court and the State that nothing inappropriate happened. Judge Glanville responded that an appellate court could tell him if he was wrong and that there were "other bodies in Georgia" that could review his conduct.[2] Judge Glanville then said Steel could return to the courtroom, took a recess, and following the recess reminded Steel that he was still being held in contempt and could purge the contempt if he revealed the source of his information. Judge Glanville told Steel that he would go into custody at the end of that day's proceedings if Steel did not reveal who disclosed the ex parte meeting. Judge Glanville then stated that he might "make some other remedies depending upon what information I find later." The jurors were then brought back into the courtroom, and the trial

---

[2] See, e.g., Ga. Const. of 1983, Art. VI, Sec. VI, Par. I (creating the Supreme Court of Georgia); Ga. Const. of 1983, Art. VI, Sec. V, Par. I (creating the Court of Appeals of Georgia); Ga. Const. of 1983, Art. VI, Sec. VII, Par. VI (creating the Judicial Qualifications Commission).

resumed.

At the end of the day, after jurors were released, Judge Glanville asked Steel if he was willing to reveal who disclosed the ex parte information. Steel informed the court that the Georgia Association of Criminal Defense Lawyers sent an attorney to represent Steel because the court accused Steel of eavesdropping, which is a crime. Judge Glanville informed Steel's attorney that he was "about to enter" an order of contempt, was offering Steel another chance to purge, and that was "the only thing I'm trying to do at this point in time." Steel's counsel argued that due process required Judge Glanville to refer the matter to another judge since Steel was entitled to a hearing and Judge Glanville would be a witness at that hearing. Judge Glanville rejected those arguments, sentenced Steel to 20 days in jail to be served on weekends, and stated that Steel was not entitled to a supersedeas bond. The written order reflecting this sentence did not provide Steel an opportunity to purge the

9

contempt. This appeal ensued.[3]

2. Steel challenges the contempt order on several grounds. We do not reach most of those arguments, because we agree with Steel that to afford Steel due process, Judge Glanville was required to recuse himself.

Our precedent makes clear that individuals facing criminal contempt are entitled to due process.[4] See *Hedquist v. Hedquist*, 275 Ga. 188, 189 (563 SE2d 854) (2002) ("The constitutional right to due

---

[3] Steel filed his notice of appeal in the superior court and an emergency motion for supersedeas with the Court of Appeals, which transferred the emergency motion to this Court. We pretermitted whether the matters fell within our jurisdiction over "cases in which a sentence of death was imposed or could be imposed," see Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (8), and took the case under our certiorari jurisdiction, granting a writ of certiorari as to both the emergency motion and the appeal of the contempt order. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. V ("The Supreme Court may review by certiorari cases in the Court of Appeals which are of gravity or great public importance.").

[4] Although the initial contempt finding was likely civil, as Judge Glanville initially offered Steel the opportunity to purge the contempt, Judge Glanville's ultimate ruling, as reflected by the written contempt order on appeal here, was criminal in nature because it punished Steel for his past conduct and offered no opportunity to purge. See *Ford v. Ford*, 270 Ga. 314, 315-316 (509 SE2d 612) (1998) ("The distinction between criminal and civil contempt is that criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order." (citation and punctuation omitted)).

process applies in criminal contempt proceedings because a conviction can result in the loss of liberty and the levy of a penal fine." (citation omitted)). What process is due depends in part on whether the contumacious conduct occurred in the court's presence and whether a court announces punishment immediately.

When the contumacious conduct occurs in the presence of the court, a trial court has the power when necessary to maintain order in the courtroom to declare the conduct to be contemptuous and announce a punishment summarily without further notice or hearing so long as the contemnor has been given an opportunity to speak in his own behalf.[5] See *Dowdy v. Palmour*, 251 Ga. 135, 141-142 (2) (304 SE2d 52) (1983); accord *Taylor v. Hayes*, 418 U.S. 488, 498 (94 SCt 2697, 41 LE2d 897) (1974) ("Even where summary punishment for contempt has been imposed during trial, the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution." (citation,

[5] Although the punishment must be announced immediately, it need not be served immediately and may be postponed until after trial. See *Dowdy v. Palmour*, 251 Ga. 135, 142 (2) (304 SE2d 52) (1983).

punctuation and footnote omitted)). These situations are typically limited to conduct that occurs in open court, because such conduct generally threatens the "court's immediate ability to conduct its proceedings, such as where a witness refuses to testify, or a party disrupts the court." *Ramirez v. State*, 279 Ga. 13, 14 (2) (608 SE2d 645) (2005) (citation and punctuation omitted). Such summary proceedings are tolerated because of a trial court's "substantial interest in rapidly coercing compliance and restoring order[.]" Id. at 14 (citation and punctuation omitted). If a trial judge was required to recuse or hold separate contempt proceedings every time a proceeding was disrupted, unruly litigants, lawyers, or members of the public would essentially possess a heckler's veto, and trial judges would have no way to restore order and proceed with court in a timely fashion.

The situation is different when the contemnor's conduct does not interfere with the court's proceedings and thus need not be punished immediately. In those cases, where the court delays punishment or the conduct occurs outside the court's presence, more

process is due. If the announcement of punishment is delayed, a court must give the contemnor reasonable notice of the specific charges and hold a hearing. See *Dowdy*, 251 Ga. at 142 (2). If the punishment is delayed *and* "the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such manner as to become involved in the controversy," that hearing "must be conducted by another judge." Id.[6]

Here, Judge Glanville did punish Steel summarily for his refusal in open court to comply with Judge Glanville's order, as he held Steel in contempt, placed him in custody, and had him removed from the courtroom. But that punishment is not the subject of this appeal.

Steel was allowed to return to the courtroom to continue representing Williams and was given until the end of that day to

---

[6] Similarly, for conduct that occurs outside the court's presence, "the considerations justifying expedited procedures do not pertain," and due process requires that a person "be advised of [the contempt] charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses." *Ramirez*, 279 Ga. at 15 (2) (citations and punctuation omitted).

comply with the court's order. Judge Glanville made clear that Steel was still in contempt, but he did not announce what specific punishment he would impose.

Because the announcement of a specific punishment was delayed by the trial court, Steel was entitled to additional process. In particular, he was entitled to have the matter heard by a different judge. Steel's repeated refusal to comply with Judge Glanville's direct order was conduct directed toward the judge. Steel continued to challenge the propriety of the ex parte meeting and asserted that he could not legally comply with Judge Glanville's order to disclose his source. The exchange between Steel and Judge Glanville makes clear that Judge Glanville was involved in the controversy. For these reasons, a different judge should have presided over the contempt hearing, and the failure to do so requires reversal. See *Dowdy*, 251 Ga. at 142 (2) (reversing contempt order on due process grounds because contempt action should have been heard by a different judge, where announcement of punishment was delayed and allegedly contumacious conduct — an attorney's failure to stand and

14

respond to the court — was conduct directed at the judge and the judge became involved in the controversy); cf. *Mayberry v. Pennsylvania*, 400 U.S. 455, 463-464 (91 SCt 499, 27 LE2d 532) (1971) ("Where [a judge] does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place.").

*Judgment reversed. All the Justices concur.*

Decided October 22, 2024.

Contempt. Fulton Superior Court. Before Judge Glanville.

*The Steel Law Firm, Colette R. Steel; The Merchant Law Firm, Ashleigh B. Merchant; R. Alexander Susor; Strickland Webster, Leigh A. Webster; Barron Law, Lynsey M. Barron*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General*, for appellee.

*Cook & Tolley, Edward D. Tolley; Garland Samuel & Loeb, Donald F. Samuel, Amanda R. Clark Palmer; Hunter J. Rodgers, Mazie L. Guertin, Jessica Jones, Greg A. Willis*, amici curiae.